Andrew D. Skale (SBN 211096)
askale@mintz.com
Ben L. Wagner (SBN 243594)
bwagner@mintz.com
Heather Silver (SBN 285509)
hsilver@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
3580 Carmel Mountain Road, Suite 300
San Diego, CA  92130
Telephone: (858) 314-1500
Facsimile:  (858) 314-1501

Attorneys for Plaintiff
ESOS RINGS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESOS RINGS, INC. a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH PRENCIPE, an individual, MCLEAR & CO., a Delaware Corporation,<br><br>Defendants. | Case No.  2:17-cv-1381<br><br>**PLAINTIFF ESOS RINGS, INC.'S COMPLAINT FOR PATENT INFRINGEMENT, FRAUDULENT TRANSFER, BREACH OF CONTRACT, DECLARATORY RELIEF, QUIET TITLE, FRAUD, BREACH OF FIDUCIARY DUTY, AND INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br><br>JURY DEMANDED |

Plaintiff ESOS RINGS, INC., for its Complaint alleges and states as follows:

## **THE PARTIES**

1.      Plaintiff Esos Rings, Inc. ("Esos") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Santa Monica, California.

2.      Defendant Joseph Prencipe ("Prencipe") is an individual, on information and belief, who resides in and is a citizen of Los Angeles, California.

3.     McLear & Co. ("MCL") is a corporation organized and existing under the laws of the State of Delaware with an unknown principal place of business.  Its registered agent is located in Dover, Delaware.  On information and belief, MCL's Executive Director is located in Los Angeles, California.

4.     Plaintiff is informed and believes and based upon such information and belief alleges that, at all times mentioned herein, defendants, and each of them, were an agent, representative, and/or alter ego of its co-defendants, or otherwise acting on behalf of each and every remaining defendant and, in doing the things hereinafter alleged, were acting within the course and scope of their authorities as an agent, representative, and/or alter ego of its co-defendants, with the full knowledge, permission and consent of each and every remaining defendant.

## JURISDICTION AND VENUE

5.     This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. sections 1 *et seq*.  Subject matter jurisdiction is therefore proper under 28 U.S.C. sections 1331 and 1338(a).  This Court has supplemental and pendent jurisdiction over the remainder of claims as they arise from a common nucleus of operative facts and form part of the same case and controversy, pursuant to 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over each of the defendants because they have each infringed U.S. Patent No. 9,313,609 ("the '609 Patent") and continued to invade the interests and title enjoyed to the '609 Patent by the California-headquartered Esos.  Both MCL and Prencipe, purporting to represent the interest of a third party, have negotiated licensing and distribution deals with California companies that have agreed to sell products infringing the '609 Patent, including with representatives of Visa, Inc. based in California.  Further, while not a valid assignment, Prencipe signed an MCL assignment purporting to subject MCL to exclusive jurisdiction in California in the event of any dispute concerning the invalid '609 Patent assignment.

7.     In these and other ways, each defendant has extensive minimum contacts with the State of California such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.  Each of them has purposefully availed itself of the benefits of the California forum, and has continued offering for sale and offering to license products infringing the '609 Patent, interfering with Esos' claim to clear title, and perpetuating the fraud on the California-headquartered Esos, despite clear notice and knowledge that all attempts to practice or claim rights to the '609 Patent are unauthorized and a violation of Esos' rights.

8.     Venue is proper in this judicial district under 28 U.S.C. sections 1391(b) and (c) and 1400(b) because a substantial part of the events or omissions giving rise to the claims occurred in the district; Esos resides in this district; and the defendants reside in this district by virtue of being subject to personal jurisdiction in this judicial district by, among others, its repeated availment and direction of its activity toward this district, and engaging in acts of infringement in this judicial district.

## FACTUAL BACKGROUND

9.     In March 2016, Prencipe recruited a former colleague, Michelle Silverstein ("Silverstein") to oversee operations for the anticipated launch of a newly patented technology.

10.     On April 12, 2016, the U.S. Patent Office issued Patent No. 9,313,609 (the "'609 Patent") to Joseph Prencipe.  The '609 Patent is titled "Contact Information Social Exchange Method and System."  Prencipe is the sole inventor. The patent covers, without limitation, a near-field communication ("NFC") ring that, when worn on the consumer's finger, can replace his credit card and house key.  A true and correct copy of the '609 Patent is attached hereto as **Exhibit A**.

### **Prencipe Incorporates MCL and Assigns His Corporation the '609 Patent**

11.     On May 1, 2016, Prencipe incorporated MCL as its sole incorporator. MCL's bylaws list Prencipe as its Executive Director, Secretary, and Treasurer.  The bylaws also give Prencipe as Executive Director the "power and authority to execute

and deliver in the name and on behalf of [MCL] any and all duly authorized agreements, documents, and instruments."

12.     On October 10, 2016, Prencipe executed a document titled "Intellectual Property Assignment Agreement" that purported to assign the '609 Patent from Prencipe to his incorporated entity, MCL.  Prencipe signed both sides of the purported assignment, signing on behalf of MCL as its CEO.  The October 10, 2016 assignment was recorded with the Patent Office on October 20, 2016.  A true and correct copy of the October 10, 2016 purported assignment of the '609 Patent from Prencipe to MCL is attached hereto as **Exhibit B**.

**Prencipe Declares the October 10 Assignment Invalid**
**and Agrees to Sell Plaintiff the '609 Patent**

13.     Prencipe then agreed to sell the '609 Patent to Silverstein and her business partner instead.

14.     On information and belief, Prencipe voided the assignment to MCL.

15.     Prencipe then agreed to form a new company and transfer ownership of the '609 Patent to the new company, which Silverstein and a primary business contact would then own and run.

16.     Prencipe told Silverstein that the previously recorded document was not a valid assignment because MCL was not a valid entity that could receive the assignment.

17.     Prencipe further informed Silverstein that a corrected assignment would instead be executed that would give Silverstein and her business partners the rights to the '609 Patent.

18.     Prencipe was at this time acting as the attorney for Silverstein and her business partners.  Prencipe decided that the '609 Patent should be assigned to Silverstein and her business partners by assigning the '609 Patent to one entity who would then assign the '609 Patent to another entity that would be owned by Silverstein and her business partners.

4

19.    In his role as attorney, Prencipe was responsible for forming the two entities.  The first to-be-formed Delaware corporation was PIL, Inc., which Prencipe referred to as an "IP Holding Company," for whom Chris Trehan was listed by Prencipe as the authorized signatory.  The second to-be-formed Delaware corporation was Esos, Inc., for whom Silverstein was said by Prencipe to be CFO and the authorized signatory.

20.    Prencipe emailed Silverstein with drafts of the assignments and corporate formation documents on October 26, 2016.  These documents were drafted by Prencipe.

21.    By way of further emails, including from his personal Gmail account on November 1, 2016, Prencipe provided Silverstein with executed final copies of the two assignments – one from Prencipe to PIL, Inc., and the second from PIL, Inc. to Esos, Inc.  True and correct copies of the fully-executed assignments are attached as **Exhibits C and D** hereto.

22.    Prencipe, however, failed to file for the incorporation of these two nascent corporations, even though weeks later he advised Silverstein that he was only waiting on the Delaware Secretary of State to confirm the companies had successfully been formed.

23.    As a result, title to the '609 Patent devolved to the the signatories for PIL, Inc. (Chris Trehan) and Esos, Inc. (Silverstein).  Neither Trahan nor Silverstein dispute the validity of these assignments.

24.    On January 27, 2017, Silverstein assigned her interest in the '609 Patent to Plaintiff Esos Rings, Inc., an entity she incorporated upon learning of Prencipe's failure to properly incorporate PIL, Inc. and Esos, Inc.  A true and correct copy of the fully-executed assignment is attached hereto as **Exhibit E** (hereinafter, Exhibits C, D, and E shall be referred to as the "Esos Assignments").

25.     In reliance on Plaintiff's rights under the '609 Patent, Plaintiff negotiated several prototyping agreements for NFC rings with large companies, including the software company, SAP, only to lose those clients as a result of Prencipe's continued false representations.

26.     Plaintiff has also entered into an agreement providing its business partner with rights to distribute the patented NFC rings branded with one of the most successful global entertainment brands in the market.  The launch is set for March 1, 2017.

**<u>Prencipe Continues To Exploit the '609 Patent To Plaintiff's Detriment</u>**

27.     Just days after providing Silverstein with the executed assignments that ultimately resulted in Plaintiff's ownership of the '609 Patent, Prencipe signed a Strategic Alliance Agreement purporting to provide rights to Visa, Inc. to use the '609 Patent for NFC rings to be sold throughout the world, including the United States.

28.     Learning of Prencipe's duplicity, Silverstein had no choice but to immediately sever ties with Prencipe and retain separate legal counsel.

29.     Prencipe refused to cease claiming ownership rights or to accept the consideration he had already agreed to.

30.     In December 2016, Prencipe demanded via Skype in a conversation with Esos' co-owners, Silverstein and Rex Scates, that, in order to reaffirm Esos' already valid title in the '609 Patent, Prencipe be paid an additional $250,000, an ongoing royalty, and a salary for an executive position wherein Prencipe would not perform any duties.

31.     In December 2016, Prencipe also told Scates that Prencipe's goal was to publically and personally shame Silverstein, until Silverstein gave in to Prencipe's financial demands.

32.     Prencipe then launched a smear campaign against Silverstein and Plaintiff, informing third parties that Esos fraudulently manufactured Esos' purchase

documents, that Silverstein and Esos were not permitted to represent the product, and that all business deals had to run through Prencipe.

33.   For example, in early January 2017, Silverstein attempted to communicate with SAP, with whom Esos had been working on a prototyping agreement.  In response, SAP confirmed that due to a supposed "leadership change," regarding the NFC rings, SAP would only be corresponding "directly with Joseph Prencipe, CEO."

34.   Prencipe also told Visa that the Esos Assignments were fraudulent.  On February 9, 2017, Visa confirmed that Prencipe told Visa that "he never assigned the '609 [P]atent to PIL Inc., Esos Inc., and Esos Rings, Inc., and that the correct and current owner of the '609 Patent is Mclear."

35.   Defendants have ignored Plaintiff's multiple demands that they cease such conduct.

36.   Prencipe thus continues to claim that his alter ego company, MCL, still owns the '609 Patent, in spite of his contradictory representation to Silverstein and his contradictory later assignment documents.

37.   Meanwhile, because Visa held a (void) grant of rights in the '609 Patent, Visa heavily publicized competing rings at the Super Bowl to 500 financial industry executives, taking pictures and promoting on social media that it had the "first" NFC ring.  Esos' business partner in the launch set for March 2017 promptly demanded that Esos take action to preserve the rights it had already been granted by Esos.

38.   Esos worked diligently and in good faith with Visa from the Wednesday through Friday before the Super Bowl to curb Visa's Super Bowl activities and publicity, which Visa refused to terminate.

39.   Following the Super Bowl, lawyers for Visa and Esos conferenced, at which time Visa advised that it had no intention of complying with any demand to cease its actions, stating that Prencipe had told them that the assignments (Exhibits C and D hereto) were fraudulent documents.

40. Defendants are currently offering a free license to the '609 Patent through a website that Defendants operate and control.

41. Plaintiff's business is at a critical juncture, and it has thus brought this lawsuit in order to protect its rights.

## FIRST CLAIM FOR RELIEF

## INFRINGEMENT OF U.S. PATENT NO. 9,313,609

## AGAINST ALL DEFENDANTS

42. Plaintiff realleges all allegations in this Complaint as if stated herein.

43. On April 12, 2016, United States Patent Number 9,313,609 entitled "Contact Information Social Exchange Method and System," was issued to Joseph Prencipe, whose full right, title, and interest have been assigned to Plaintiff, including the right to sue for past and future infringements and damages.

44. Defendants sold or offered for sale articles of manufacturer to which the '609 Patent applies.  The Strategic Alliance Agreement between the defendants and Visa dated on or around November 4, 2016 purports to grant to Visa the right to distribute NFC rings practicing the '609 Patent within the United States.  On information and belief, the defendants have already received substantial payment for these rings, and continue to ship these infringing rings into the United States, which are then distributed by Visa pursuant to the Strategic Alliance Agreement.  The rings by their very nature infringe the '609 Patent, as they are designed to practice and give Visa the benefit of the '609 Patent's invention.

45. Defendants, individually and in combination, through the website, http://nfcring.com/patents/: (1) state "we allow free licensing of our patents," (2) identify the '609 Patent as one of the "patents [that] can be freely licensed" and provide a link to the Google Patent online copy of the '609 Patent's contents, and (3) state that this "license" can be obtained by "simply email[ing] contact@nfcring.com with your company/personal contact details."  This is an open offer of infringement to the public at large.

46.    The above-mentioned products are referred to herein as the "Accused Products."

47.    Defendants have infringed and continue to infringe the '609 Patent by using, selling, offering for sale, importing, and/or actively inducing others to use products that infringe one or more of the claims in the '609 Patent, and are thus liable for patent infringement pursuant to 35 U.S.C. § 271.  This includes the practice by Defendants via the Accused Products, which infringe at least Claims 1, 13 and 16 of the '609 Patent.

48.    Defendants are also liable for patent infringement under 35 U.S.C. § 271 because they have and continue to actively induce third parties to make and sell the Accused Products even after multiple demands by Plaintiff not to do so, and even though Prencipe himself previously assigned the '609 Patent so as to possess no continuing rights to practice its claims.  By the conduct alleged herein, Defendants have acted in a manner that encouraged these third parties to infringe the '609 Patent, including by purporting to offer a "free" license to the patent.

49.    Defendants' infringement of the '609 Patent has caused and continues to cause damage to Esos in an amount to be determined at trial.

50.    Defendants' infringement of the '609 Patent has caused and will continue to cause immediate and irreparable harm to Esos for which there is no adequate remedy at law, unless this Court enjoins and restrains such activities.

51.    Defendants knew of the '609 Patent prior to the filing of this lawsuit.

52.    Defendants' infringement of the '609 Patent was willful and deliberate, was objectively reckless due to the high likelihood that their actions constituted infringement of a valid patent, and they knew or should have known of this objectively-defined high risk because the risk was so obvious.  Thus, Esos is entitled to enhanced damages pursuant to 35 U.S.C. § 284, and costs incurred prosecuting this action.

### SECOND CLAIM FOR RELIEF

### ACTUAL FRAUDULENT TRANSFER

### AGAINST ALL DEFENDANTS

53.　Esos realleges all allegations in this Complaint as if stated herein.

54.　On or about October 10, 2016, Prencipe signed an assignment of the '609 Patent to MCL, which he signed on behalf of himself as an individual and as the CEO for MCL.

55.　On or about November 1, 2016, Prencipe signed a second assignment to PIL, Inc. for same '609 Patent, which assignment has devolved to Esos Rings, Inc. by virtue of subsequent assignments.

56.　The October 10, 2016 assignment was an actual fraudulent transfer made with the intent to hinder, delay or defraud Shelly Silverstein, the nascent Esos, Inc., and Plaintiff.

57.　If it is shown that Prencipe did not void the transfer to MCL, Prencipe made the transfer to MCL with the intention of making the November 1, 2016 series of transfers invalid.  At the time of the transfer to MCL, Prencipe intended that by making the first assignment, he would make the second assignment an ineffective transfer by removing title from his name.  Prencipe made the first transfer to MCL with the intent to hinder, delay or defraud the ultimate transferee in the second transfer (to Silverstein and nascent Esos, Inc.) out of the benefit of their bargain and the patent ownership rights he was assigning, a fraudulent intent confirmed by the circumstances:

　　　　a. Prencipe knew he was the attorney upon whom Silverstein and the parties involved in the November 1, 2016 transaction were relying upon to provide full and complete title in the '609 Patent, and as such owed fiduciary duties to Silverstein and the nascent Esos, Inc.;

b.  In the assignment to PIL, Inc., Prencipe specifically recites "Assignor has not validly assigned the Patent to any other entity."  Additionally, Prencipe advised Silverstein that the transfer to MCL was invalid;

c.  At the time Prencipe negotiated the assignment to Silverstein and the nascent Esos, Inc. (through PIL, Inc.), he intended (unbeknownst to Silverstein) to continue to – and actively did – negotiate with other parties for MCL in order to continue to exploit the '609 Patent;

d.  Prencipe drafted the assignment documents, advised Silverstein that it would be fraudulent to continue to use MCL for the assignment, and made assurances in the November 1, 2016 assignment that he had free and clear title to the assignment;

e.  Prencipe drafted all of the papers that he told Silverstein were necessary to accomplish a valid transfer of the patent rights to Silverstein and the nascent Esos, Inc.;

f.  Prencipe did not advise Visa, Inc. of the November 1, 2016 transfer divesting title in the '609 Patent, but instead executed a Strategic Alliance Agreement just days later that was ineffective as a result of the November 1, 2016 transfer;

g.  Prencipe recorded the MCL assignment with the Patent Office on October 20, 2016, while he and Silverstein were negotiating the terms of the transfer to Silverstein and nascent Esos, Inc., and just six days before he circulated the draft assignment documents on October 26 that he went on to revise and sign on or around November 1, 2016;

h.  Prencipe's MCL assignment purports to be for only $500.  In contrast, the October 26, 2016 draft assignments were for far more, and by the time of the executed November 1, 2016 series of transfers, the sale price for PIL, Inc. was $20,000;

i.   At the time, Prencipe had no money, and required a loan from Silverstein's business partner to pay rent;

j.   When Prencipe learned shortly thereafter that Silverstein had negotiated substantial business for a ring branded with one of the most successful global entertainment brands in the market in reliance on rights in the '609 Patent, Prencipe demanded $250,000, ongoing royalties for the already-granted rights, and a salary for an executive position wherein Prencipe would not perform any duties; and

k.   Prencipe has engaged in a course of conduct to conceal his participation in the Esos Assignments.  He denies that the November 1, 2016 series of transfers even exist.  He has repeated this misrepresentation to multiple members of the business community with whom Silverstein and Plaintiff subsequently attempted to do business.  This is despite an email in which Prencipe (using his personal Gmail account) first sent drafts of the documents, and later executed copies.

58.   As a result, Esos has been damaged in an amount to be determined at trial.

59.   Prencipe's aforementioned conduct was malicious, oppressive, fraudulent, and otherwise entitles Esos to an award of exemplary and punitive damages against Prencipe, in an amount according to proof at trial.

60.   Esos' remedies at law are inadequate, and Esos requires equitable relief declaring the MCL transfer void, that Esos is the rightful holder of title in and to the '609 Patent, and barring Prencipe or any successors in interest not taking interests through Esos (including MCL and Visa) from asserting any claim of rights or interest in or to the '609 Patent.

## THIRD CLAIM FOR RELIEF

### BREACH OF CONTRACT

### AGAINST PRENCIPE

61.     Esos realleges all allegations in this Complaint as if stated herein.

62.     The agreements attached as Exhibits C through E hereto are valid and binding agreements on Esos and Prencipe.

63.     Esos has performed all obligations required of it under the agreements, and is excused from any non-performance.

64.     Prencipe represented in assigning the '609 Patent that "Assignor has not validly assigned the Patent to any other entity."

65.     Prencipe assigned the '609 Patent, providing he "hereby assigns all right, title, and interest in and to the Patent," and gave "further assurances" that he "shall use all reasonable endeavours [sic] to procure that any necessary third party shall, promptly execute and deliver such documents and perform such acts as may reasonably be required for the purpose of giving full effect to this agreement."

66.     Prencipe breached the agreement by breaching his representation and warranty of title.

67.     Prencipe also breached his obligation of further assurance.  Prencipe failed to make any further assurances, and instead denied the assignment was effective, demanded more compensation to give any further assurances of title, and has made representations in the relevant business community specifically designed to undermine any claim of right, title, and interest assigned.

68.     Prencipe also breaches his duty of good faith and fair dealing by taking action to deprive Esos of the benefits of its bargain.

69.     Demand was made by Esos, including on January 24, 2017, that Prencipe take such actions as would provide further assurances of title in the '609 Patent, particularly given his attempts to undermine title after the assignment took place.  Prencipe has failed to respond to that demand, and on information and belief,

has continued to take actions aimed at undermining Esos' right, title, and interest in the '609 Patent.

70.    Esos has been damaged as a result of these actions, in an amount to be determined at the time of trial.

71.    Esos' remedies at law are inadequate, and Esos requires a temporary restraining order ("TRO"), preliminary injunction and permanent injunction requiring Prencipe to take such further actions to provide all necessary further assurances of title to the '609 Patent and barring any actions inconsistent therewith.  This injunctive relief should include without limit: (1) barring Prencipe and all other parties bound to the order under Federal Rule of Civil Procedure 65 from taking any action to directly or indirectly claim or exploit the rights of the '609 Patent; (2) barring Prencipe and all other parties bound to the order under Federal Rule of Civil Procedure 65 from taking any actions that would diminish the value of the '609 Patent; (3) barring Prencipe and all other parties bound to the order under Federal Rule of Civil Procedure 65 from further assigning the rights in the '609 Patent, including but not limited to, offering licenses to the '609 Patent; (4) requiring Prencipe to execute any documents necessary or appropriate to unwind the MCL assignment or subsequent assignments devolved therefrom, to the extent not already done; (5) requiring Prencipe in his individual capacity and his capacity as authorized signatory for MCL (and any purported successor in interest) to execute a quitclaim of all right, title, and interest in and to the '609 Patent, to the extent not already done; and (6) for such other and further injunctive relief as the Court deems appropriate.

## FOUTH CLAIM FOR RELIEF
## DECLARATORY RELIEF
## AGAINST ALL DEFENDANTS

72.    Esos realleges all allegations in this Complaint as if stated herein.

73.    An actual controversy has arisen and now exists between Esos and Defendants concerning their respective rights and duties in that Esos contends that it

14

owns the rights to the '609 Patent, whereas Defendants contend that they are entitled to continue to exploit the rights under the '609 Patent.

74.    Esos desires a judicial determination of its rights and duties, and a declaration that it is the lawful owner of the '609 Patent.

75.    A judicial declaration is necessary and appropriate at this time under the circumstances so that Esos may ascertain its rights and duties under the '609 Patent. The judicial declaration would have the practical effect of informing the parties' future conduct by preventing Defendants from continuing their wrongful exploitation of rights under the '609 Patent to which they are not entitled, or exploiting such rights in the future.

76.    Esos has been irreparably harmed by Defendants' continued exploitation of the '609 Patent as it diminishes the value of the patent and prevents Esos from exploiting its rights under the '609 Patent.

### FIFTH CLAIM FOR RELIEF
### QUIET TITLE IN '609 PATENT
### AGAINST ALL DEFENDANTS

77.    Esos realleges all allegations in this Complaint as if stated herein.

78.    There is an actual case and controversy between the parties, and Esos requires a declaration that it has clear title and injunctive relief quieting title as against all other assertions of interest in the '609 Patent.

79.    Esos claims that it is the rightful owner of all right, title, and interest in the '609 Patent, while the Defendants continue to assert that they hold certain conflicting rights.

80.    Esos seeks declaratory relief and an order quieting title, providing that the true titleholder in the '609 Patent is Esos, that the MCL assignment recorded with the USPTO is void, invalid or otherwise erroneous, and that no other persons or entities have any right, title or interest in the '609 Patent (including by way of license) except to the extent that Esos has granted them such rights.

81.    Esos' remedies at law are inadequate.  Esos seeks all further injunctive relief in furtherance of and to effectuate this declaratory and quiet title relief, including a directive that the USPTO expunge the MCL assignment from its online assignment records.

### SIXTH CLAIM FOR RELIEF

**FRAUD**

**AGAINST PRENCIPE**

82.    Esos realleges all allegations in this Complaint as if stated herein.

83.    In or around October and November 2016, Prencipe sold to Esos the rights to the '609 Patent.  Esos stands ready, willing, and able to pay under the assignments.

84.    In connection with the sale, by both email and orally, Prencipe represented to Esos' representative, Silverstein, that a previous assignment of the '609 Patent to MCL was invalid, and that corrected and effective assignments would issue to give Esos the rights to the '609 Patent.

85.    Prencipe now maintains that the assignment of the '609 Patent is valid.

86.    Esos reasonably believed Prencipe's representations regarding the invalidity of the assignment of the '609 Patent to MCL were true and reasonably relied on them in assenting to the purchase of the '609 Patent and in negotiating licensing agreements with third parties for use of the rights pursuant to the '609 Patent.

87.    Esos contends that the Esos assignments were valid.  To the extent that the Esos Assignments are found invalid or otherwise ineffective, Esos pleads in the alternative, on information and belief, that Prencipe knew and believed at the time of making the representations that they were false, and that Prencipe made the representations with the intent to fraudulently induce Esos to buy the '609 Patent and attempt to exploit it.

88.     As a direct and proximate result of Prencipe's fraud and the facts herein alleged, Esos has been damaged in a sum according to proof at the time of trial.

89.     In committing the acts described herein, Prencipe acted in conscious disregard of the rights of Esos and others and was guilty of malice, and/or oppression, and/or fraud, thus entitled Esos to an award of punitive and exemplary damages in an amount appropriate to be determined at trial.

90.     Esos' remedies at law are inadequate and thus Esos is entitled to a TRO, preliminary and permanent injunctive relief including as alleged above.

## SEVENTH CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTY
### AGAINST PRENCIPE

91.     Esos realleges all allegations in this Complaint as if stated herein.

92.     Prencipe is, and at all times mentioned in this complaint, was an attorney duly licensed by the State of California.

93.     Prencipe was the attorney for Esos and its predecessors in interest, for corporate matters, including in designing a lawful way for Prencipe to assign the rights to the '609 Patent.  As their attorney, Prencipe owed a fiduciary duty of undivided loyalty in protecting his clients' interests.

94.     Prencipe violated his fiduciary duty by, among other things, (1) failing to form PIL, Inc. and Esos, Inc., entities that were supposed to be formed in order to assure Esos' ownership of the '609 Patent, (2) to the extent he misrepresented the status of the '609 Patent with respect to MCL and failed to take all actions required for the valid assignment of the '609 Patent, and (3) by entering agreements to exploit the '609 Patent after assigning those same rights to Esos.

95.     As a result of Prencipe's breach of fiduciary duty, Esos has been damaged in an amount to be determined at trial.

96.     In committing the acts described herein, Prencipe acted in conscious disregard of the rights of Esos and others and was guilty of malice, and/or oppression,

and/or fraud, thus entitled Esos to an award of punitive and exemplary damages in an amount appropriate to be determined at trial.

97.   Esos' remedies at law are inadequate and thus Esos is entitled to a TRO, preliminary and permanent injunctive relief including as alleged above.

## EIGTH CLAIM FOR RELIEF
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS
## AGAINST ALL DEFENDANTS

98.   Esos realleges all allegations in this Complaint as if stated herein.

99.   In reliance on the rights it owned under the '609 Patent, Esos and its predecessors in interest were negotiating several prototyping agreements, including with SAP, that would have resulted in an economic benefit to Esos.

100.   Silverstein advised Prencipe of the ongoing negotiations and provided him the contact information for the representatives with whom Esos was negotiating.

101.   Defendants intended to disrupt the relationship between Esos and SAP, among other relationships, by misrepresenting that Esos had no rights to the '609 Patent.

102.   As a direct and proximate result of Defendants' willful and intentional acts, the business relationship between these parties was damaged in an amount to be determined at trial, as SAP and others now refuse to communicate or do business with Esos.

103.   Esos has been damaged in an amount to be determined at trial.

104.   The aforementioned acts of Defendants were undertaken knowingly and intentionally and are willful, oppressive, and malicious.  Plaintiff is therefore entitled to punitive and exemplary damages from Defendants in an amount to be determined at trial.

105.   Esos' remedies at law are inadequate and thus Esos is entitled to a TRO, preliminary and permanent injunctive relief including as alleged above.

**PRAYER**

**WHEREFORE**, Plaintiff demands the following relief:

1.     A judgment in favor of Plaintiff and against Defendants on all counts;

2.     A TRO, preliminary and permanent injunction on Defendants, their agents, licensees, alliance partners, affiliates and anyone else acting or purported to act on their behalf from further patent infringement, from asserting any rights in the '609 Patent, or from taking any actions to interfere with Esos' right, title, and interest in the '609 Patent;

3.     A TRO, preliminary and permanent injunction requiring Prencipe to take such further actions to provide all necessary further assurances of title to the '609 Patent and barring any actions inconsistent therewith, including without limit: (1) barring Prencipe and all other parties bound to the order under Federal Rule of Civil Procedure 65 from taking any action to directly or indirectly claim or exploit the rights of the '609 Patent; (2) barring Prencipe and all other parties bound to the order under Federal Rule of Civil Procedure 65 from taking any actions that would diminish the value of the '609 Patent; (3) barring Prencipe and all other parties bound to the order under Federal Rule of Civil Procedure 65 from further assigning the rights in the '609 Patent, including but not limited to, offering licenses to the '609 Patent; (4) requiring Prencipe to execute any documents necessary or appropriate to unwind the MCL assignment or subsequent assignments devolved therefrom, to the extent not already done; (5) requiring Prencipe in his individual capacity and his capacity as authorized signatory for MCL (and any purported successor in interest) to execute a quitclaim of all right, title, and interest in and to the '609 Patent, to the extent not already done; and (6) for such other and further injunctive relief as the Court deems appropriate.

4.     Damages in an amount to be determined at trial, with such damages enhanced and/or trebled for willful infringement;

5.     Exemplary and punitive damages;

6.  Pre-judgment interest at the legally allowable rate on all amounts owed;

7.  Costs, expenses and fees;

8.  An order finding that the infringement of the patent-in-suit has been willful and trebling the damages awarded to Esos, as provided by 35 U.S.C. § 284;

9.  Declaratory relief that the true titleholder in the '609 Patent is Esos, that the MCL assignment recorded with the USPTO is void, invalid or otherwise erroneous, and that no other persons or entities have any right, title, or interest in the '609 Patent (including by way of license) except to the extent that Esos has granted them such rights.

10.  A declaration that this is an exceptional case and award Esos its attorneys' fees incurred in prosecuting this action, as provided by 35 U.S.C. § 285;

11.  Such other and further relief as this Court may deem just and proper.

Dated:  February 21, 2017          MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO

                                   By: *s/Andrew D. Skale*
                                   _____
                                   Andrew D. Skale, Esq.
                                   Ben L. Wagner, Esq.
                                   Heather Silver, Esq.

                                   *Attorneys for Plaintiff,*
                                   *ESOS RINGS, INC.*

## DEMAND FOR JURY

Esos Rings, Inc. demands trial by jury on all issues triable as a matter of right at law.

Dated:  February 21, 2017          MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO

                                   By: *s/Andrew D. Skale*
                                   _____
                                   Andrew D. Skale, Esq.
                                   Ben L. Wagner, Esq.
                                   Heather Silver, Esq.

                                   *Attorneys for Plaintiff,*
                                   *ESOS RINGS, INC.*